UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

ERIN GREENE,

                      Plaintiff,

         -against-

BUDDAKAN NY, L.P., STARR RESTAURANT
ORGANIZATION, LP, and BRANDON
WERGELES, *Individually*,

                    Defendants.

----------------------------------------------------------------X

**Case No.:**

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff ERIN GREENE ("Plaintiff"), by her attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, New York State Executive Law §§ 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-502(a) *et seq.* ("NYCHRL") and seeks relief and damages to redress the injuries she has suffered as a result of **being sexually harassed, discriminated and retaliated against by the Defendants on the basis of her gender/sex (female)**.

2.    Plaintiff worked at Defendants' restaurant, BUDDAKAN NYC, for almost eight years before she was unfairly retaliated against and not rehired after the COVID-19 state of emergency ended because she had previously complained of the restaurant's most senior manager, Defendant BRANDON WERGELES ("WERGELES") sexually harassing her.

3.    For a span of about three years, Defendant WERGELES continuously made inappropriate

sexual comments to Plaintiff, which escalated when he explicitly propositioned her for sex in or around March 2019.

4.       Defendant WERGELES, who is currently the Regional Manager at BUDDAKAN not only sexually harassed Plaintiff but he also fostered a pervasively sexist workplace culture by consistently berating and demeaning female employees.

**JURISDICTION, VENUE, PROCEDURAL PREREQUISITES**

5.  Jurisdiction of this Court is proper under 42 U.S.C. §§ 12101 *et seq*., and 28 U.S.C. §§ 1331 and 1343.

6.  The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city law pursuant to 28 U.S.C. § 1367.

7.  Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

8.  By: (a) timely filing a Charge of Discrimination with the New York State Division of Human Rights and cross-filing, the same, with Equal Employment Opportunity Commission ("EEOC") on December 11, 2020; (b) receiving a Notice of Right to Sue from the EEOC on May 7, 2021; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing a copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action.  A copy of the Notice of Right to Sue is annexed hereto as Exhibit A; a copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

## PARTIES

9.    At all relevant times, Plaintiff was and is a female resident of the State of New York, Kings County.

10.    Upon information and belief, Defendant BUDDAKAN NY, L.P. ("BUDDAKAN") is a foreign limited partnership duly existing pursuant to, and by virtue of, the laws of the State of Pennsylvania that is authorized to do business in New York.

11.    Upon information and belief, Defendant BUDDAKAN employs more than fifteen employees and is thus subject to all statutes upon which Plaintiff is proceeding herein.

12.    Upon information and belief, Defendant STARR RESTAURANT ORGANIZATION, LP ("STARR RESTAURANTS") is a foreign limited partnership duly existing pursuant to, and by virtue of, the laws of the State of Pennsylvania that is authorized to do business in New York.

13.    Upon information and belief, Defendant STARR RESTAURANTS employs more than fifteen employees and is thus subject to all statutes upon which Plaintiff is proceeding herein.

14.    Defendants BUDDAKAN and STARR RESTAURANTS are hereinafter also referred to as "Corporate Defendants."

15.    Upon information and belief, Defendant BRANDON WERGELES ("WERGELES") was an employee of Corporate Defendants, holding the position of "Director of Operations" at Corporate Defendants' Buddakan NYC restaurant.

16.    At all relevant times, Defendant WERGELES was Plaintiff's supervisor and/or had supervisory authority over Plaintiff. Defendant WERGELES had the authority to hire, fire, affect the terms and conditions of Plaintiff's employment, and/or influence the decisionmaker of same.

17. Defendants BUDDAKAN and STARR RESTAURANTS constitute a single employer for purposes of this action. In the alternative, Defendants BUDDAKAN and STARR RESTAURANTS are joint employers for purposes of this action.

18. By way of example, Defendant BUDDAKAN is fully owned and operated by Defendant STARR RESTAURANTS.

19. By way of a second example, Defendant STARR RESTAURANTS advertises employment positions for Defendant BUDDAKAN and hires/employs the personnel working there.

20. By way of a third example, while working at Corporate Defendants, Plaintiff was paid by Defendant BUDDAKAN.

21. By way of a fourth example, Corporate Defendants share the same Human Resources Department in that Defendant BUDDAKAN does not have its own Human Resources Department and instead uses Defendant STARR RESTAURANTS' Human Resources Department.

22. By way of a fifth example, Defendant WERGELES has been assigned a business email from Defendant STARR RESTAURANTS.

23. By way of a sixth example, Defendant WERGELES has identified himself as "General Manager, Buddakan, STAR RESTAURANTS" on the popular website www.yelp.com when responding to public inquiries about the restaurant.

24. At all relevant times, Plaintiff was an employee of Corporate Defendants' "Buddakan NYC" restaurant, located at 75 9th Avenue, New York, New York 10011.

25. Corporate Defendants and Defendant WERGELES are hereinafter also referred to as "Defendants."

**MATERIAL FACTS**

4

26.   In or around October 2012, Plaintiff began working at BUDDAKAN as a "Server."

27.   Plaintiff's expected salary for 2020 was approximately $85,000.00.

28.   At all relevant times, Plaintiff was an above-satisfactory employee and was qualified to perform the duties and functions of her employment.

29.   In or around January 2016, Corporate Defendants hired Defendant WERGELES as the "General Manager" of BUDDAKAN.

30.   Plaintiff and Defendant WERGELES' work schedule overlapped and she had to work with him during all of her shifts.

31.   A few months after Defendant WERGELES' hiring, Plaintiff became exposed to a sex/gender based hostile work environment wherein she was subjected to inappropriate sexually harassing conduct by Defendant WERGELES that continued in a systematic manner until in or around his promotion to Director of Operations in or around the summer of 2019.

32.   In or around August 2016, while at work, Defendant WERGELES told Plaintiff that **"if [they] hung out outside of work, [she] would be having his baby nine months later,"** making Plaintiff feel extremely uncomfortable.

33.   **Thereafter and through in or around the summer of 2019, Defendant WERGELES continuously made sexually inappropriate comments to Plaintiff, including telling Plaintiff that she was the "hottest" at the restaurant and that she should know that he thought that; constantly telling Plaintiff how attractive he thought she was; complimenting the way her lips looked whenever she wore a red lipstick; and intently staring at her up and down and telling her how "good" or "amazing" she looked whenever he saw her in regular clothes instead of the uniform she wore at the restaurant.**

34. All these comments made Plaintiff extremely uncomfortable and embarrassed.

35. On multiple occasions, Defendant WERGELES jokingly told Plaintiff that he would "get in trouble" if he and Plaintiff hung out outside of work, in a sexually inappropriate manner that made extremely uncomfortable.

36. **On an almost weekly basis, Defendant WERGELES also hugged Plaintiff, making her feel extremely uncomfortable. Plaintiff did not witness Defendant WERGELES hugging any other employees of the restaurant.**

37. Overall, Defendant WERGELES constantly tried to find ways to be alone with Plaintiff throughout her shifts, which also made Plaintiff feel uncomfortable since it was not something that he did with other employees.

38. **On one occasion, Defendant WERGELES told Plaintiff that he could not wear tight jeans because his penis was "too large" for them**.

39. Plaintiff was shocked to hear that comment and felt extremely uncomfortable and disturbed.

40. **On another occasion, while at work, Defendant WERGELES told Plaintiff to describe to him how she masturbated. He continued that even though he could not respond to whatever she might tell him [about how she masturbated], it was fine if she described it to him and he "just listen[ed]."**

41. Plaintiff was shocked to hear Defendant WERGELES's question and his effort to downplay how extremely inappropriate it was. Plaintiff felt extremely embarrassed and walked away.

42. Defendant  WERGELES also continuously made rude and sexist comments to Plaintiff, including calling her **"puss face,"** telling her to **"shut up,"** calling her **"unhinged,"** and telling her that she looked like **"Hitler youth"** after she got a haircut.

43. Upon information and belief, Defendant WERGELES did not speak in this manner when addressing male employees, but consistently berated and demeaned other female employees as well.

44. Upon information and belief, Defendant WERGELES had previously sexually harassed other women at his former jobs, as he told Plaintiff that he could not text employees because he had gotten in trouble for doing it in the past. Plaintiff understood this to mean that the texts that Defendant WERGELES was referring to had been sexually inappropriate.

45. Although Plaintiff attempted to ignore Defendant WERGELES' inappropriate comments, the sexual harassment escalated in or around March 2019, when Defendant WERGELES told Plaintiff that **they should "just do this thing" and should "just do it already."**

46. Plaintiff asked him to clarify what he meant, and he stated, **"you know – *it*," implying that he wanted to engage in sexual relations with Plaintiff.**

47. **Defendant WERGELES then told Plaintiff that his wife was out of town in Miami and that he had their house to himself that weekend and asked Plaintiff to go over so that they could have sex.**

48. Plaintiff felt extremely uncomfortable and offended by Defendant WERGELES' sexual propositioning and rejected his advances.

49. Despite Plaintiff's rejection, Defendant WERGELES continued to harassingly proposition Plaintiff for sex during her work shifts.

50. The very following day after his initial sexual proposition, Defendant WERGELES pulled Plaintiff aside while at work and asked her again if she was free the next day. He repeated that his wife was out of town and that Plaintiff should come over, again implying that he was inviting her over so that they could have sex.

51.     Plaintiff again felt extremely uncomfortable, rejected his proposition, and walked away from him.

52.     About a week later, Defendant WERGELES asked Plaintiff what she was doing the following weekend.

53.     Plaintiff responded that she had plans.

54.     Defendant WERGELES then asked Plaintiff, "You live in Bay Ridge, right?"

55.     When Plaintiff responded affirmatively, Defendant WERGELES stated, **"I don't mind traveling for a good reason," in a sexually suggestive manner, again pressuring Plaintiff to engage in sexual relations with him by stating that he wanted to visit Plaintiff at her own home for the purpose of having sex with her.**

56.     Plaintiff again felt extremely uncomfortable and walked away from him, effectively rejecting his sexual advances.

57.     Plaintiff felt extremely uncomfortable, humiliated, intimidated, and violated by Defendant WERGELES' unlawful harassment.

58.     In or around the summer of 2019, Defendant WERGELES was promoted to Director of Operations.

59.     Soon after his promotion, Defendant WERGELES fabricated a story related to Plaintiff having pushed someone at work and gave Plaintiff a "final warning" for it.

60.     Plaintiff felt extremely disturbed by this unwarranted and retaliatory discipline and ultimately was able to prove that she did not push anyone.

61.     Upon information and belief, Defendant WERGELES disciplined Plaintiff in retaliation to her rejecting his sexual advances.

62.     Afraid that Defendant WERGELES would further retaliate against her for rejecting his sexual advances, in or around September 11, 2019, Plaintiff called Michelle Wagner

("Wagner"), the head of the Human Resources department of the Corporate Defendants to complain about the sexual harassment and retaliation that she had been experiencing, including that Defendant WERGELES had propositioned her for sex, and that she believed that he was retaliating against her for rejecting his sexual advances.

63.  To Plaintiff's disbelief, Wagner tried to deter Plaintiff from filing a formal complaint against Defendant WERGELES with the Human Resources department until Plaintiff was "sure" that that is what she wanted to do.

64.  Plaintiff moved forward with submitting a formal complaint about the sexual harassment.

65.  On or about October 13, 2019, Plaintiff had a meeting with the Vice President of Operations and Wagner where she again complained about the sexual harassment that she had been experiencing in the hands of Defendant WERGELES. In tears, Plaintiff expressed her fear of violent retaliation from Defendant. After Plaintiff's complaints about her unfair discipline, Wagner took her off "final warning" status.

66.  During this meeting, Wagner tried to downplay the fact that Defendant WERGELES had clearly propositioned Plaintiff for sex and frequently mislabeled what had happened as if Defendant WERGELES had innocently asked Plaintiff out on a date, making Plaintiff feel extremely uncomfortable.

67.  In or around March 2020, Plaintiff was laid off due to the COVID-19 pandemic.

68.  Upon information and belief, since that time, Defendants have rehired many of their staff back but have not offered to rehire Plaintiff.

69.  Upon information and belief, Defendant WERGELES made the decision not to re-hire Plaintiff or influenced the decisionmaker of the same.

70.  Upon information and belief, another female employee that was laid off due to COVID-19 was not rehired either because she had previously complained about Defendant

WERGELES being sexist.

71.    **Plaintiff was not rehired in retaliation for complaining of sexual harassment**.

72.    The above are just some of the examples of the harassment and discrimination that Plaintiff had to endure while working for Defendants.

73.    **Defendants treated Plaintiff differently, solely due to her sex/gender (female)**.

74.    Plaintiff has been unlawfully discriminated against, humiliated, degraded and belittled, and as a result, suffered a violation of her rights, emotional distress, loss of income/earnings, loss of salary, loss of benefits, special damages, legal fees/costs, loss of enjoyment of life, economic hardship, inconvenience, and emotional pain and suffering.

75.    Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

76.    As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION
### DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

77.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

78.    This claim is authorized and instituted pursuant to the provisions of Title VII for relief based upon the unlawful employment practices of Corporate Defendants.

79.    Plaintiff complains of Corporate Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's **sex/gender**.

80.    Corporate Defendants engaged in unlawful employment practices by discriminating against Plaintiff because of her **sex/gender (female)**.

## AS A SECOND CAUSE OF ACTION
### RETALIATION UNDER TITLE VII
### (Not Against Individual Defendant)

81.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

82.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

83.     Corporate Defendants engaged in unlawful employment practice prohibited by Title VII by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Corporate Defendants.

## AS A THIRD CAUSE OF ACTION
### DISCRIMINATION UNDER THE NYSHRL

84.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

85.     Executive Law § 296 provides that,

> 1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

86.     Defendants engaged in unlawful discriminatory practices by discriminating against Plaintiff because of her **sex/gender (female)**.

11

## AS A FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL

87.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

88.  Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

89.  Defendants engaged in unlawful discriminatory practices by discriminating against Plaintiff because of her opposition to the unlawful employment practices of the Defendants.

## AS A FIFTH CAUSE OF ACTION
## AIDING AND ABETTING UNDER THE NYSHRL
## (Against Individual Defendant)

90.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

91.  New York State Executive Law § 296(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so.

92.  Defendant WERGELES violated the section cited herein as set forth above.

## AS A SIXTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL

93.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

94.  New York City Administrative Code §8-107(1) provides that:

It shall be an unlawful discriminatory practice: (a) For an employer

> or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

95.    Defendants engaged in unlawful discriminatory practices by discriminating against Plaintiff because of her **sex/gender (female)**.

## AS A SEVENTH CAUSE OF ACTION
## RETALIATION UNDER THE NYCHRL

96.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

97.    The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

98.    Defendants engaged in unlawful discriminatory practices in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of the Defendants.

## AS AN EIGHTH CAUSE OF ACTION
## AIDING AND ABETTING UNDER THE NYCHRL
### (Against Individual Defendant)

99.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

100.    The New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

101.    Defendant WERGELES engaged in unlawful discriminatory practices in violation of the

New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## JURY DEMAND

102.    Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, the NYCHRL, and the NYSHRL in that Defendants discriminated and retaliated against Plaintiff on the basis of her gender/sex (female);

B.    Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.    Awarding Plaintiff punitive damages;

E.    Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in the prosecution of this action; and

F.    Awarding such other legal and equitable relief as this Court deems necessary, just, and proper.

Dated: New York, New York
      June 17, 2021

                                    **PHILLIPS & ASSOCIATES,**
                                    **ATTORNEYS AT LAW, PLLC**

By:         _____

                      Brittany A. Stevens
                      Morgan Mickelsen
                      45 Broadway, Suite 430
                      New York, New York 10006
                      T: (212) 248-7431
                      F: (212) 901-2107
                      bstevens@tpglaws.com
                      mmickelsen@tpglaws.com
                      ***Attorneys for Plaintiff***